## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**GREGORY IRVIN GOETZ**                                                         **PLAINTIFF**

**v.**                                     **CIVIL ACTION NO. 3:07-CV-P101-S**

**DEFENDANT YOUNG, ET AL.**                                       **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, Gregory Irvin Goetz, brought a civil-rights complaint alleging Eighth Amendment violations by Defendants Sue Young, Physical Therapist; Deb Williams, Nurse Practitioner; Dr. Scott Haas, Medical Director; Dr. Steve Hiland; and Chanin Hiland in their individual and official capacities. The official-capacity claims have been dismissed. The Court now considers the motions for summary judgment in favor of Defendants Haas and Steve and Chanin Hiland (DN 39), in favor of Defendant Williams (DN 41), and in favor of Defendant Young (DN 42). For the following reasons, the Court will grant the motions for summary judgment.

### I. SUMMARY OF CLAIMS

In his complaint, Plaintiff, an inmate at Luther Luckett Correctional Complex, alleged that in April 2006, he hurt his neck while working out. He alleged that he signed up for sick call numerous times and complained to Defendant Williams, "who never once looked or touched [his] neck" and who instead told him that he was on "[N]eurontin and [B]aclofen and had a tens unit[1] for pain." Plaintiff alleges that the neurontin was prescribed for "bi polar" and the TENS unit was for his lower back. He further alleges that he went to the Kentucky State Penitentiary

---

[1] The Court assumes that Plaintiff is referring to a "transcutaneous electrical nerve stimulator" or TENS unit, which may be prescribed to alleviate pain. *See* www.wikipedia.org.

for physical therapy, where Defendant Young, a physical therapist, told him he did not have a herniated disc.  He alleged that Defendants Williams, Young, and Haas have been deliberately indifferent to his medical needs because his problem is getting worse and he is in severe pain and has muscle spasms.  As relief, Plaintiff requested monetary damages, punitive damages, and injunctive relief in the form of having an MRI and a neurosurgery evaluation.  He attached copies of prison medical grievances regarding his alleged neck injury.

In an attachment to a document he filed entitled Response to Discovery Request (DN 30), in which he argued that Defendants' response to discovery was not adequate because they had provided only the parts of the records that support their position, he attached a note from Dr. Robert Nickerson.  That note is dated August 14, 2006, and states:  "Consult Disposition – . . . I would suggest that this patient see MD before PT as it appears that the neck pain is new and would suggest neuro exam and then imaging if needed.  Signed Electronically by Robert Nickerson, UK-Phy. Medicine/Rehabilitation, MD."  Defendants Young and Williams then filed a response certifying that they had forwarded to Plaintiff all pertinent medical records (DN 33). Their response further stated that Defendants had performed objective assessments of Plaintiff's subjective complaints of neck pain.  They further stated that the note from Dr. Nickerson was an electronic consultation with the Kentucky Department of Corrections (DOC) and that Dr. Nickerson never examined Plaintiff or had full access to all of Plaintiff's medical records, but merely assumed that the neck pain was new.

## II. ANALYSIS

**A.**     **Summary-judgment standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is

"entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

**B.      Defendants Williams and Young**

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

4

Defendants argue that Plaintiff only evidences a disagreement with his medical care; that Dr. Nickerson's statement that imaging may be appropriate is not to the contrary as Plaintiff was never examined by Dr. Nickerson, and that Plaintiff has shown no need for narcotics, especially given his drug-abuse history. In response, Plaintiff states that Defendants have acted with deliberate indifference by treating him as a drug addict and believing that he has faked his injury (DN 43). He states that all he asks for is an MRI and x-ray, and then if they are abnormal, to see a neurosurgeon. He further states that he will pay for the test himself if it is normal. He further asserts that the non-DOC doctor, Dr. Nickerson, has recommended an MRI and to be seen by a neurosurgeon.

Plaintiff also filed another response (DN 50), filed out of time, which essentially says the same thing. He attaches what appears to be a medical note dated July 31, 2006, from the Department of Corrections, stating in pertinent part: "Again, pt. is narcotic seeking reporting Baclofen not strong enough for muscle spasms." In essence, Plaintiff seems to be arguing that Defendants have refused to treat his medical condition (neck pain) based on their allegedly erroneous assumption that Plaintiff is merely exhibiting drug-seeking behavior.

The three summary-judgment motions filed by Defendants have extensive medical records and exhibits attached to them. The record shows that Plaintiff has a long history of drug abuse. Some highlights include failing numerous drug tests while imprisoned between 1988 until he was paroled in 1996. His parole was revoked shortly thereafter for, among other things, failing to complete drug treatment. Once back in prison, Plaintiff was again disciplined on several occasions for conducting a drug deal and for failing drug tests. In September 2006, while in prison, he again tested positive for marijuana and opiates. The record shows that since 1997

5

Plaintiff has complained of pain, in one form or another, on numerous occasions, and several doctors have noted that narcotics would not be prescribed for him. A medical note from Defendant Williams dated February 6, 2007, noted that Plaintiff had tested positive for cocaine use.

Thus, there is ample evidence in the record to show that Plaintiff has consistently exhibited drug-seeking behavior and continued to use drugs even while in prison. However, the record regarding each of Defendants who actually saw him with regard to his claim of neck pain beginning in April 2006, which is the basis of his complaint in this case, shows that he was treated for neck pain, albeit not how he desired.

### 1.     Treatment by Defendant Williams (nurse)

Defendant Williams saw Plaintiff on May 31, 2006, and ordered x-rays of his cervical spine for complaints of neck pain after turning over in bed. Defendant Williams' notes dated June 28, 2006, state that Plaintiff complained of cervical spine pain and that she was requesting a physical therapy consult because Plaintiff was continuing to complain of muscle cramps in his neck after turning over in bed a few weeks before. She prescribed Baclofen and Neurotin pending the physical therapy evaluation. She also made a TENS unit available to him. Her notes also state: "CSpine film results (-) bony abnormality. Will refer to PT for eval; they are familiar w/ pt.'s hx of back problems."

Plaintiff's belief that he should have been given an MRI, an x-ray, or other treatment rather than the Neurontin, Baclofen, TENS unit, and physical therapy with which he was provided merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d

857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Defendants have explained that in suggesting Plaintiff see a doctor before physical therapy, Dr. Nickerson did not have access to all of Plaintiff's records. Moreover, even if the denial of an MRI, x-ray, or certain medications could be considered malpractice, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

### 2. Treatment by Defendant Young (physical therapist)

Attached to her motion for summary judgment is Defendant Young's affidavit. She avers that she treated Plaintiff on September 22, 2006, upon referral from Defendant Williams. She avers that at that time Plaintiff reported neck and arm pain which he associated with lifting heavy weights but that his records document that he originally associated it with sleeping awkwardly on his neck. She avers that he reported pain of 8 on a 10-point scale and that the pain was generalized and did not radiate, which she avers is unusual and that she doubted was from a herniated disc. She avers that she documented that Plaintiff had a full range of motion in his neck, which would not be present if he had a herniated disc. She further states that she performed a strength test which revealed that Plaintiff could produce 135 pounds of pressure with his right hand, but only 20 pounds of pressure with his left, leading her to believe that he was not giving his best effort during the test, particularly as she there was no muscle atrophy in either of his arms. She suspected malingering. She prescribed a course of home exercises, recommended that he not carry any heavy weights, and recommended a follow-up in the

standard follow-up time of four to six weeks.

On November 9, 2006, she saw him for a routine follow up, at which time Plaintiff told her he had stopped doing the exercises. She also noted that the inmate has continued to work the weight pile in an aggressive manner and was advised to stop such activity and concentrate on his stretching and relaxation program. Defendant Young further avers that initially Plaintiff appeared with very guarded posture when talking about his pain, but when distracted with other conversation, his neck was relaxed and moved freely. She further avers that it appeared to her that he was faking his symptoms in part because Plaintiff stated that his left arm was completely numb from his shoulder to his hand, which is inconsistent with a herniated disc. She avers that she performed a range-of-motion test on his arm, during which she could feel his muscles contracting to prevent his arm from moving although he told her he could not move it any further, which was a "clear and unequivoal example of his faking symptoms." Defendant Young averred that there were no consistent objective symptoms to be addressed by physical therapy, and to the extent that he had any real symptoms they were more consistent with only a muscle strain. Because Plaintiff was not following her instructions, she saw no reason to see him again. She avers that she provided care to Plaintiff as she would to any other individual but that she concluded that he was attempting to manipulate his symptoms and was not complying with medical orders.

Again, Plaintiff has evidenced only a disagreement with treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d at 860 n.5. Although the physical therapist suspected malingering based on objective observations which she averred to in her affidavit, she prescribed a course of physical therapy

8

consisting of home exercises, a recommendation that he not carry any heavy weights, and a follow-up in four to six weeks. Because Plaintiff did not comply with the prescribed course of physical therapy, there was no reason for Defendant Young to see him again. Nothing in the record suggests that Defendant Young was deliberately indifferent to a serious medical need. There are no genuine issues as to a material fact, and Defendant Young is entitled to summary judgment in her favor. *See* Fed. R. Civ. P. 56(c).

**B.     Defendants Haas, Steve Hiland, and Chanin Hiland**

The record shows that the only involvement these Defendants had in connection with Plaintiff's allegations of deliberate indifference with regard to treatment of his neck pain was in the grievance procedure initiated by Plaintiff when he did not receive the treatment he believed was warranted for his neck pain. On June 29, 2006, Plaintiff grieved what he perceived to be refusal to treat his pain in his neck and left arm, which he referred to as a "new condition." The informal resolution of that grievance was that Plaintiff had been prescribed the maximum doses of Baclofen and Neurontin and had a TENS unit and a referral to physical therapy had been made. He appealed.

On August 26, 2006, the Health Care Grievance Committee, consisting of Defendant Steve Hiland, Defendant Chanin Hiland, and a nurse consultant, concurred with the informal resolution. In his final administrative review, Defendant Haas concurred with the findings of the Health Care Grievance Committee, stating that "[y]ou have been referred for a physical therapy evaluation, which will provide valuable diagnostic and treatment information to your provider. Please be patient as your non-emergent medical condition is fully evaluated." A November 6, 2006, letter from Defendant Haas to Plaintiff in response to a letter from Plaintiff stated that

9

Defendant Haas's staff had been in contact with the medical department at Luther Luckett Correctional Complex and it was his understanding that in March 2006 Plaintiff had been approved for a TENS unit and lumbar support. He further stated that with regard to Plaintiff's request for an MRI Defendant Williams had explained that Plaintiff needed to learn and follow good spinal-care practice to reduce symptoms and prevent further damage. Defendant Haas recommended to Plaintiff that he follow the treatment regime set forth by his provider.

There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x. 441, 445 (6th Cir. 2005) (per curiam). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Med. Servs.*, 73 F. App'x. 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See, e.g., Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (reversing denial of summary judgment to prison officials whose only involvement was the denial of administrative remedies); *Martin v. Harvey*, 14 F. App'x. 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment. *Id.* Because Plaintiff's only allegations against Defendants Haas, Steve Hiland, and Chanin Hiland arise out of their decision to deny his administrative grievances, these Defendants are entitled to summary judgment. *See Shehee*, 199 F.3d at 300.

Thus, Defendants' motions for summary judgment will be granted. As the granting of these summary-judgment motions terminate all of the claims against Defendants, a separate judgment will be entered.

## **ORDER**

For the foregoing reasons,

**IT IS ORDERED** that the summary-judgment motions filed by Defendants Haas and Steve and Chanin Hiland (DN 39), Defendant Williams (DN 41), and Defendant Young (DN 42) are **GRANTED**.

**IT IS FURTHER ORDERED** that any outstanding motions are hereby **DENIED as moot**.

Date:


cc: Plaintiff, *pro se*
      Counsel of record
4411.009